**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

SHAMANE HOWE,                    :    Case No. 3:25-cv-454
                                 :
    Plaintiff,                :
                                 :
vs.                              :
                                 :
                                 :
ALLSTATE INSURANCE CO., *et al.*,    :    District Judge Walter H. Rice
                                 :    Magistrate Judge Peter B. Silvain, Jr.
    Defendants.               :
                                 :

**ORDER and**
**REPORT AND RECOMMENDATION[1]**

This case is before the Court upon *pro se* Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. #1) and for a *sua sponte* review of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2).

Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. #1) is **GRANTED**. However, for the reasons that follow, the undersigned **RECOMMENDS** that the Court **DISMISS** this action under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief may be granted.

### I.     PLAINTIFF'S COMPLAINT

Plaintiff brings this action against six defendants—Allstate Insurance Company, Allstate Executive Vice President and Chief Claims Officer Mike Fiato, Allstate Executive Vice President and Chief Legal Officer Christine DeBaise, Attorney Paul B. Roderer, Jr., Attorney Alan Trenz, and Plaintiff's Aunt Arnetta Gary. (Doc. #1-1, *PageID* #8-9). Plaintiff's cause of action comprises

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

five grievances, including breach of contract, insurance bad faith, fraudulent misrepresentation, civil rights violations under 42 U.S.C. § 1981, and intentional and negligent infliction of emotional distress. *Id.* at 14-15. Plaintiff contends that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332. *Id.* at 8.

Plaintiff's cause of action springs from a residential fire that occurred on February 21, 2024, resulting in damage to property. *Id.* at 9. At the time of the fire, Defendant Arnetta Gary was the homeowner and homeowners' insurance policyholder with Defendant Allstate Insurance Company. *Id.* Plaintiff avers that she "resided at the property as a non-negligent residential relative and maintained substantial personal property at the residence." *Id.* As a result of the fire, Plaintiff further contends that she suffered "a total loss … exceeding $50,000." *Id.*

Following the fire, Plaintiff filed an independent insurance claim with Defendant Allstate Insurance Company. *Id.* Plaintiff avers she cooperated with Defendant Allstate Insurance Company's investigation—responding to requests for information and submitting "a[n] audio and written statement." *Id.* at 10. Plaintiff also complied with a subrogation investigation. *Id.* On May 8, 2024, an adjuster for Defendant Allstate Insurance Company contacted Plaintiff to obtain a list of Plaintiff's personal property that had been damaged. *Id.* (citing Doc. #1-8, *PageID* #41). On May 13, 2024, the adjuster for Defendant Allstate Insurance Company again requested an inventory list detailing the personal property Plaintiff lost as a result of the fire. *Id.* (citing Doc. #1-8, *PageID* #50). On May 13, 2024, and May 14, 2024, Plaintiff responded to the adjuster's requests for information, stating Defendant Allstate Insurance Company took pictures of her bedroom and bathroom, indicating "[t]here's no way that [she] can remember" all of the property that was lost in the fire, and stating she would "definitely try [her] best to complete it as soon as possible." *Id.* (citing Doc. #1-8, *PageID* #s 47-48). On May 14, 2024, non-party Mark Krevis

2

informed Plaintiff that her claim had been denied; on May 17, 2024, Plaintiff requested the decision denying her claim in writing. *Id.* (citing Doc. #1-8, *PageID* #51) ("Mark Krevis told me via phone call that he was denying my claim however I need this decision in writing."). Plaintiff sent Defendant Allstate Insurance Company a "Letter of Appeal" on May 22, 2024. *Id.* (citing Doc. #1-14, *PageID* #s 62-64). On July 14, 2024, a non-party manager for Defendant Allstate Insurance Company spoke with Plaintiff, advising that her claim could be approved "if the Plaintiff contacted [Defendant] Arnetta Gary and asked her to be put back on the claim." *Id.* (citing Doc. #1-15, *PageID* #69).

Throughout the process, Plaintiff alleges she was told by representatives for Defendant Allstate Insurance Company that the partial denial letter had been sent to Defendant Arnetta Gary, who was the insured party. *Id.* (citing Doc. #1-13, *PageID* #56). Upon request from Plaintiff, Defendant Arnetta Gary sent Plaintiff a copy of the partial denial letter on July 30, 2024. *Id.* at 11 (citing Doc. #1-16, *PageID* #s 73-74). However, portions of that denial letter were concealed. *Id.* Plaintiff alleges she requested Defendant Arnetta Gary provide her with the full partial denial letter as well as the information regarding the findings and appeals process, "remind[ing] the Defendant [Arnetta Gary] that a partial denial of claim would prevent her from challenging the denial." *Id.*

When the claims and appeals process proved fruitless, Plaintiff filed a small claims action in the Montgomery County Municipal Court in August 2024, alleging "concealment of documents and misrepresentation pertaining to the insurance claims." *Id.* at 12. A hearing was held on September 11, 2024. *Id.* After the case was dismissed, Plaintiff received a check for $5,289 from Defendant Arnetta Gary. *Id.* (citing Doc. #1-17, *PageID* #76). The memo line on the check read "2 bags fire claim." *Id.* Plaintiff again requested—in the form of a "promissory note"—that

Defendant Arnetta Gary deliver any withheld documents related to the claim within 30 days; Plaintiff alleges she never received the necessary documents. *Id.*

After Defendant failed to deliver the documents, as requested, Plaintiff filed a complaint against Defendant Arnetta Gary and Defendant Allstate Insurance Company in the Montgomery County Court of Common Pleas on October 1, 2024. *Id.* at 13. Plaintiff's complaint, seeking $2 million against each defendant, alleged breach of contract, insurance bad faith, property damages, and emotional distress. *Id.* Plaintiff filed a Motion for Default Judgment against Defendant Allstate Insurance Company and Defendant Arnetta Gary on November 19, 2024. *Id.* The Montgomery County Court of Common Pleas initially overruled Plaintiff's motion, stating that Plaintiff failed to demonstrate that Defendant Allstate Insurance Company was properly served because the representative's signature was returned illegible and that Plaintiff failed to attach an affidavit from the Department of Defense indicating that Defendant Arnetta Gary was not in the military. *Id.* (citing Doc. #1-18, *PageID* #s 78-79). On Plaintiff's Motion for Reconsideration filed on January 7, 2025, the Montgomery County Court of Common Pleas again overruled Plaintiff's motion for default judgment as to Defendant Allstate Insurance Company but sustained Plaintiff's motion as to Defendant Arnetta Gary, as Plaintiff had since filed the appropriate affidavit. *Id.* (citing Doc. #1-18, *PageID* #s 81-82). On June 25, 2025, Plaintiff filed a "Formal Notice of Withdrawal and Call for Immediate Federal Intervention to Safeguard American Justice," *Id.* (citing Doc. #1-21, *PageID* #105-108), which the Montgomery County Court of Common Pleas construed as a voluntary dismissal and dismissed the case without prejudice.

While Plaintiff pursued a course of action in the courts, she discovered that a second insurance claim had been filed without her authorization. *Id.* at 14 (citing Doc. #s 1-23–1-25).

Throughout her complaint, Plaintiff nebulously states that the Montgomery County Court of Common Pleas failed to properly address her motions for default judgment and related filings and therefore "engaged in abuse of judicial power." *Id.* at 13. Plaintiff further alleges that she requested that "the Administrative Judge investigate claims of judicial misconduct and procedural irregularities" and that these requests were not acted on. *Id.*

Plaintiff requests compensatory damages in the amount of $1 billion; separate compensatory damages in the amount of $1 billion from Defendant Allstate Insurance Company, Defendant Paul Roderer, and Defendant Alan Trenz; punitive damages; court costs; and $100,000 in legal fees for her work as a *pro se* litigant. *Id.* at 15-16. Plaintiff further requests that this Court "[d]eclare unauthorized insurance activity void," "[e]njoin further misuse of Plaintiff's name and personal information," and "[a]ward costs and all other relief the Court deems just and proper." *Id.*

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint upon finding (1) the claims are frivolous or malicious; (2) it fails to state a claim upon which relief may be granted; or (3) it seeks monetary relief from a defendant who is immune from such relief.  It is appropriate for the Court to conduct this review *sua sponte* prior to issuance of process "so as to spare prospective defendants the inconvenience and expense of answering such complaints."  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

In conducting this initial review, the Court accepts Plaintiff's allegations as true and construes them liberally in his favor.  *See Donald v. Marshall*, No. 84-3231, 1985 WL 13183, at *1 (6th Cir. Apr. 5, 1985) (stating that, "[w]hen considering a *pro se* action for dismissal pursuant to 28 U.S.C. § 1915(d), the complaint should be liberally construed and the allegations of the

complaint must be taken as true and construed in favor of the plaintiff"). However, while *pro se* pleadings are "to be liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*), *pro se* plaintiffs must still satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd.*, *P'Ship v. Flagstar Bank*, *F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of

6

considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

In addition to the § 1915(e)(2) review, the Court must dismiss an action if it determines at any time that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *Williams v. Cincy Urban Apts.,* No. 1:10-cv-153, 2010 WL 883846, at *2 n.1 (S.D. Ohio Mar. 9, 2010) (Weber, D.J.) (citing *Carlock v. Williams,* 182 F.3d 916, 1999 WL 454880, at *2 (6th Cir. June 22, 1999) (table)). Pursuant to Federal Rule of Civil Procedure 8(a)(1), a pleading must contain "a short and plain statement of the grounds for the court's jurisdiction …."  "The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. § 1331, which provides for '[f]ederal-question' jurisdiction, and § 1332, which provides for 'diversity of citizenship' jurisdiction." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006).

District courts have federal-question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  District courts have diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and involves "(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; [or] (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties...." 28 U.S.C. § 1332(a).

## III.   DISCUSSION

Upon review of Plaintiff's Complaint, the Court should find that Plaintiff's allegations fail to state a claim upon which relief may be granted.

### A.  Failure to State a Claim

#### i.  Civil Rights

To the extent that Plaintiff asserts a violation of federal law under 42 U.S.C. § 1983, which is the statutory vehicle to redress alleged violations of rights guaranteed by the United States Constitution or federal statute, *Lomax v. Hennoy*, 151 F.3d 493, 500 (6th Cir. 1998), Plaintiff must allege: (1) "the deprivation of a right secured by the Constitution or laws of the United States," and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003); *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). If a plaintiff does not allege both elements, then the § 1983 claim fails. *Lausin v. Bishko*, 727 F. Supp. 2d 610, 625 (N.D. Ohio 2010).

Even construing Plaintiff's complaint liberally, Plaintiff fails to sufficiently state a factual basis necessary to plead a § 1983 claim. Plaintiff has not alleged the deprivation of a federal right, and she has not alleged facts suggesting that any of the named defendants, who are private citizens and entities, are state actors subject to suit under § 1983. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (stating that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful"); *see also Otworth v. Vanderploeg*, 61 F. App'x 163, 165 (6th Cir. 2003) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of law within the meaning of § 1983.") (citing *Polk County v. Dodson*, 454 U.S. 312, 318 (1981)). Therefore, the undersigned recommends Plaintiff's civil rights violations claim under § 1983 be dismissed.

### ii. Breach of Contract

The essential elements of breach of contract are (1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages to the plaintiff. *Kline v. Mortg. Elec. Registration Sys., Inc.*, No. 16-3932, 704 Fed. Appx. 451, 463 (6th Cir. 2017)

(citing *Siemaszko v. FirstEnergy Nuclear Operating Co.*, 187 Ohio App. 3d 437, 444, 932 N.E.2d 414 (6th Dist. 2010)). As explained above, even construed in the light most favorable to the plaintiff, a complaint must be supported by factual allegations that render its claims "plausible on its face." *Bell Atlantic Corp.*, 550 U.S. at 570. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

Here, however, such an inference would be unreasonable. Plaintiff's complaint is devoid of sufficient factual allegations suggesting that a contract existed between the parties. Regarding Defendant Allstate Insurance Company, Plaintiff's complaint and exhibits indicate that, while Plaintiff may have been a claimant under the insurance policy, she was not a policyholder. (Doc. #1-1, *PageID* #9). Even assuming that a contract existed and that Plaintiff performed, Plaintiff has not alleged a factual basis sufficient to establish that Defendant Allstate Insurance Company breached said contract by denying Plaintiff's claim. Regarding the remaining defendants—Arnetta Gary, Attorney Paul Roderer, Jr., and Attorney Alan Trenz—Plaintiff does not allege that she shared a contractual relationship with any of them. Therefore, the undersigned recommends Plaintiff's breach of contract claim be dismissed.

### iii. Insurance Bad Faith

Under Ohio law, "[a]n insurer has a duty to its insured to act in good faith in the handling of an insured's claims." *Hahn's Elec. Co. v. Cochran*, 2002-Ohio-5009, at ¶ 41 (10th Dist. Sept. 24, 2002) (citing *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1319 (1983) ("Accordingly, this court holds that, based on the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured."). To establish a facially plausible claim for insurance bad faith, a plaintiff must sufficiently allege "that its insurer

9

'[failed] to exercise good faith in the proceeding of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor.'" *Id.* (quoting *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 400 (1994)). Foundational to that factual basis is a contractual relationship. *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 517 (6th Cir. 2010) ("[I]n order to assert a bad faith claim, the parties must have a contractual relationship."); *Gillette v. Estate of Gillette*, 837 N.E.2d 1283, 1287 (10th Dist. 2005) ("Given the contractual relationship requirement, Ohio courts have repeatedly held that a third-party claimant cannot assert bad-faith claims against an insurer.") (internal citations omitted). More simply, "Ohio law does not allow third parties to file bad faith insurance claims." *Donahue v. Travelers Co.*, No. 5:24-cv-01141, 2025 WL 2806841, at *12 (N.D. Ohio Oct. 2, 2025).

Here, as stated above and even taken in the light most favorable, Plaintiff's complaint is devoid of any factual basis that shows she is in contractual privity with any of the named Defendants. In the case of Defendant Allstate Insurance Company, Plaintiff expressly states that she is not the insured or policyholder and references herself as "claimant." (Doc. #1-1, *PageID* #9) ("Defendant Arnetta Gary was the named policyholder under an Allstate homeowners insurance policy covering the property."); (Doc. #1-12, *PageID* #52) ("I filed a claim against Allstate and your insured Arnetta G (*sic*) Gary."); (*see also* Doc. #s 1-9, 1-15, 1-23; *PageID* #s 44, 67-69, 114). Further, Plaintiff does not allege that she was listed on the title of the property nor as a beneficiary of the policy held by Defendant Arnetta Gary. Therefore, the undersigned recommends Plaintiff's insurance bad faith claim be dismissed.

### iv. Fraudulent Misrepresentation

Under Ohio law, a plaintiff seeking damages for fraudulent misrepresentation must establish that (1) a representation was made, (2) the representation was material to the relevant

10

transaction, (3) the misrepresentation was made falsely and "with knowledge of its falsity," or with a reckless disregard for the truth, (4) the defendant intended to mislead the person relying on the misrepresentation, (5) the plaintiff justifiably relied on that representation, and (6) the plaintiff suffered damages as a result of that reliance. *Marbley v. Metaldyne Co.*, 2003-Ohio-2851, at ¶ 25 (9th Dist. June 4, 2003) (quoting *Cohen v. Lamko, Inc.*, 462 N.E.2d 407, 409 (1984)) (citing *Gaines v. Preterm-Cleveland, Inc*., 514 N.E.2d 709, 712 (1987)). When alleging fraud, a plaintiff "must state[ ] with particularity the circumstances constituting fraud …" *Doe v. Gupta*, No. 3:22-cv-1122, 2025 WL 2521125, at \*5 (N.D. Ohio Sept. 2, 2025) (quoting Fed. R. Civ. P. 9(b)). Under this heightened standard, plaintiffs must plausibly allege the time, place, and content of the allege fraudulent misrepresentation. *Id.* (citing *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 444 (6th Cir. 2008) (internal citations omitted)).

Liberally construed, Plaintiff's complaint alleges that Defendant Allstate Insurance Company made a representation, through its adjusters or managers, that her claim was denied. (Doc. #1-1, *PageID* #s 10-11). However, Plaintiff has not alleged that the representation was material to a transaction, that the representation was false, that Defendant Allstate Insurance Company intended to mislead her, that she relied on the supposed representation, and that she suffered damages as a result. Additionally, taken in the light most favorable to her, Plaintiff's complaint alleges that Defendant Arnetta Gary misrepresented the purpose of the $5,289 check delivered to Plaintiff after Plaintiff's small claims action was dismissed on September 11, 2024. (Doc. #1-1, *PageID* #12). Plaintiff further alleges that Defendant Arnetta Gary "purposely drafted" the check and its memo to read "2 bags fire claim" and concealed the memo with her thumb when delivering it to Plaintiff, implying that the misrepresentation was material to the transaction, that the misrepresentation was made intentionally or with a reckless disregard for the truth, and that

11

Defendant Arnetta Gary intended to mislead Plaintiff. *Id.* However, Plaintiff has not alleged that she justifiably relied on this misrepresentation nor that she suffered damages as a result. Plaintiff's complaint makes no apparent allegations of fraudulent misrepresentation against Defendants Mike Fiato, Christine DeBaise, Paul Roderer, Jr., or Alan Trenz. Therefore, the undersigned recommends Plaintiff's fraudulent misrepresentation claim be dismissed.

### v.   Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotion distress, Plaintiff must plausibly allege "(1) that the Defendant intended to cause the Plaintiff serious emotional distress, (2) that the Defendant's conduct was extreme and outrageous, and (3) that the Defendant's conduct was the proximate cause of Plaintiff's serious emotional distress." *Cody v. Slusher*, No. 1:17-CV-00132, 2019 WL 366686, at *5 (N.D. Ohio January 30, 2019) (citing *Phung v. Waste Mgt.*, 71 Ohio St.3d 408, 410, 644 N.E.2s 286 (1994)).

> To recover for intentional infliction of emotional distress in Ohio, it is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability is found only where the conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

*Mendlovic v. Life Line Screening of Am., Ltd.*, 877 N.E.2d 377, 386 (8th Dist. 2007) (citing *Yeager v. Local Union 20*, 453 N.E.2d 666, 671 (1983) (abrogated on other grounds by *Welling v. Weinfeld*, 866 N.E.2d 1051 (2007)); *see also Cody*, 2019 WL 366686, at *5-6.

Plaintiff alleges that Defendants' conduct caused severe emotional distress, homelessness, and economic harm. (Doc. #1-1, *PageID* #15). However, Plaintiff's statements, even taken in the light most favorable to Plaintiff, amount to mere conclusions. Plaintiff has not, for example, stated a sufficient factual basis to indicate that she has experienced emotional harm nor that such harm

12

was severe. Likewise, Plaintiff has not stated a sufficient factual basis that Defendant's conduct was extreme and outrageous. Based on Plaintiff's allegations, Defendants' conduct—which amounts to partially denying an insurance claim for property damage, sending the partial denial letter to the insured or policyholder, not sending a partial denial letter to Plaintiff, informing Plaintiff that she may be able to recover if she were to speak with the insured or policyholder, and delivering to Plaintiff a check for $5,289 with "2 bags fire claim" written in the memo—do not "suggest conduct that is regarded as atrocious and utterly intolerable in a civilized society." *Cody*, 2019 WL 366686, at *6. Therefore, the undersigned recommends Plaintiff's intentional infliction of emotion distress claim be dismissed.

### vi. Negligent Infliction of Emotional Distress

Under Ohio law, to recover for a claim of negligent infliction of emotional distress, a plaintiff must allege that she "was a bystander to an accident or was in fear of actual and personal physical peril." *Cody*, 2019 WL 366686, at *6-7 (citing *Audia v. Rossi Bros. Funeral Home, Inc.*, 748 N.E.2d 587, 589-90 (7th Dist. 2000)). Further, a plaintiff must allege that she "suffered 'serious emotional distress,' which 'may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case.'" *Thomas v. United States*, No. 1:14 CV 2184, 2016 U.S. Dist. LEXIS 166003, at *17-18 (N.D. Ohio Sept. 26, 2016) (quoting *Paugh v. Hanks*, 451 N.E.2d 759, 765 (Ohio 1983)). Here, while Plaintiff "respectfully requests that this court take[ ] note that [she] believes that he life is in grave danger due to the overwhelming facts related to this case," (Doc. #1-1, *PageID* #17), Plaintiff fails to allege a sufficient factual basis that she is in actual fear of physical peril or that any of those situations would render a reasonable person unable to cope

13

adequately with the mental distress resulting from that situation. Therefore, the undersigned recommends Plaintiff's negligent infliction of emotion distress claim be dismissed.

### B. Jurisdiction

As Plaintiff's claim of civil rights violations under 42 U.S.C. § 1983 fails to state a claim upon which relief may be granted, this Court does not have federal question jurisdiction under 28 U.S.C. § 1331. However, Plaintiff asserts that this Court would also have diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Federal courts have diversity jurisdiction when the amount in controversy is more than $75,000 and each plaintiff is a citizen of a different state than each defendant. 28 U.S.C. § 1332(a)(1). "[A] plaintiff seeking diversity jurisdiction [must] set forth the factual basis on which that jurisdiction is predicated." *Farmer v. Fisher*, 386 F. App'x 554, 556 (6th Cir. 2010). "In a federal diversity action, the amount alleged in the complaint will suffice unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount." *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)).

While the parties appear to be diverse, there is some question as to the amount in controversy. In her complaint, Plaintiff requests compensatory damages "in excess" of $1 billion, generally, as well as compensatory damages "in excess" of $1 billion each from Defendant Paul Roderer, Jr., and Defendant Alan Trenz. (Doc. #1-1, *PageID* #s 15-16). Plaintiff also requests a total of $300,000 in legal fees, court costs, and "costs and all other relief the Court deems just and proper." *Id.* As a threshold issue, attorney's fees may be considered when calculating the amount in controversy only where they are provided for by contract or by statute. *Williamson v. Aetna Life Ins. Co.*, 481, F.3d 369, 376 (6th Cir. 2007). However, "a *pro se* litigant who is *not* a lawyer is *not*

14

entitled to attorney's fees." *Kay v. Ehrler*, 499 U.S. 432, 435 (1991) (citing *Gonzalez v. Kangas*, 814 F. 2d 1411 (9th Cir. 1987); *Smith v. DeBartoli*, 769 F. 2d 451, 453 (7th Cir. 1985), cert. denied, 475 U.S. 1067 (1986); *Turman v. Tuttle*, 711 F. 2d 148 (10th Cir. 1983) (*per curiam*); *Owens-El v. Robinson*, 694 F. 2d 941 (3rd Cir. 1982); *Wright v. Crowell*, 674 F. 2d 521 (6th Cir. 1982) (*per curiam*); *Cofield v. Atlanta*, 648 F. 2d 986, 987-988 (5th Cir. 1981); *Lovell v. Snow*, 637 F. 2d 170 (1st Cir. 1981); *Davis v. Parratt*, 608 F. 2d 717 (8th Cir. 1979) (*per curiam*)) (emphasis in original). Therefore, Plaintiff's $300,000 request for attorney's fees should not be considered when determining amount in controversy.

Further, while Plaintiff's request for $3 billion in compensatory damages is certainly more than $75,000, Plaintiff only alleges "a total loss of personal property exceeding $50,000." *Id.* at 9. Plaintiff does not provide a factual basis to explain the discrepancy between the $50,000 in personal property and the $1 billion sought on relief. Therefore, based on Plaintiff's account of her damages, and because Plaintiff's request for legal fees cannot be considered, it is unclear whether Plaintiff's allegations meet or exceed the requisite amount in controversy.

**IT IS THEREFORE ORDERED THAT:**

Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. #1) is **GRANTED**.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's Complaint be **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2);

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith and therefore

deny plaintiff leave to appeal *in forma pauperis*.  *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997); and

3. The case be terminated on the Court's docket.

May 19, 2026                        *s/Peter B. Silvain, Jr.*
                                    Peter B. Silvain, Jr.
                                    United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).